THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES ABENDROTH, Defendant-Appellant.

Fourth District   Nos. 14012-14015 cons.

Opinion filed September 12, 1977.

Richard J. Wilson and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Thomas W. Gendry, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:
Defendant Charles Abendroth appeals from convictions of arson and sentences imposed thereon in four consolidated cases tried by a jury in the

Circuit Court of Macon County. In each case he was sentenced to 1 to 20 years imprisonment. Among the errors cited on appeal are the claims that in each case the evidence was insufficient to prove his guilt beyond a reasonable doubt and that he was denied due process by the failure of the State to furnish him, pursuant to his demand, a tape recording of a confession made by him which contained information favorable to his defense. We determine that all but one of the convictions must be reversed because of the failure of the proof and that a new trial must be granted upon the other charge because of the failure to provide defendant with the tape recording.

Defendant was arrested in Maroa in the early morning hours of March 2, 1976, after the chief of police of Maroa had observed him driving a truck in a manner that crossed the center line of a road several times. In the cab of the truck was one opened can of beer and several unopened ones. A quantity of folded newspapers was under the seat. In the bed were two containers containing a substance that smelled like gasoline. A pair of gloves were also found in the truck. According to the arresting officers, defendant's breath smelled of "alcohol." Defendant was taken into custody, and advised of his Miranda rights by an Officer Stevens after he, defendant, signed a Miranda rights waiver. The case against defendant is based upon his statements given to Stevens during that interview as testified to by that officer. The testimony was as follows:

"Q. [by counsel for the State] O.K., what happened then?

A. [by Officer Stevens] Well, then he told me that somewhere around before Christmas in 1975, he thought it might have been the last few days of November, or the first of December, but he did remember it was before Christmas, he went in the Maroa area and there was some old abandoned buildings that—where the house had exploded, and he thought that the house had exploded from a furnace explosion and partially burned, and he set fire to one of the buildings there that night. From there, he thought that he went to a place, the Carl Pence place, where he said he burned down, what he described as an old chicken coop. Later on, he said he went somewhere near the rest area around Maroa and burned a building there. He said on March 1, that he had gone to Clinton and on his way back, came across a corn crib and he set this afire and went on a little further, and found an old abandoned two story building and there he took prairie grass and papers and set this building on fire.

Q. What else did he say, if you can recall?

A. He said—I ask him why he had done this, if he had been offered money or any reasons for doing this, and he said he had never been offered any money. Most of the places, he didn't even know the owner, but somewhere along the line, he had gotten the

idea that he could help clean up the county, possibly some of the owners could collect insurance, but maybe sometime someone would catch him and he would be killed in the act and his family would stand to collect somewhere around $30,000 and their problems would be over.

Q. Did he describe to you how he started these fires?

A. Usually with old newspapers or prairie grass, or cardboard boxes, and he said that the mixture in the cans was oil and gasoline, or powersaw fuel that he used.

Q. All right. Did he say anything about these particular containers, People's Exhibits Nos. 14 and 15, regarding these fires?

A. Yes, sir. He explained that these were the last containers that he had used.

Q. All right, now, did he give you any names of any place other than Carl Pence?

A. He gave me the name of the first one, but I can't recall right now, sir. * * *

Q. Was it the John Owens property?

A. Yes, sir. He stated he had been there twice.

Q. Did he give any dates, other than shortly before Christmas?

A. He may have given dates, the only ones I can remember, is the ones that he told me, the later part of November, or the first of December. * * *."

The defendant testified denying setting the fires and saying that he was intoxicated when interviewed by Stevens. He gave vague testimony of being coerced by threats and promises into making statements to Stevens admitting setting the fires but on cross-examination said he did not know whether he set the fire at the "Carl Pence place" or not. The defendant had given similar testimony upon a motion to suppress his confessions.

■■ Cases Nos. 14014 and 14015 concern arson against the property of Fred Stolley. Stolley, the Maroa police chief and the chief of the volunteer fire department answering the call all confirmed the charge in Case No. 14014 that a barn and shed on his property burned on December 2, 1975. The chief of police testified that defendant was present at the scene. Stolley also testified that: (a) a house on that property had burned the year before and (b) on December 2, 1975, he was in the process of selling the property to John Owens. This testimony is consistent with defendant's admission that in late November or early December 1975, he had set fire to an old building on John Owens' property which was located in a place where a house had previously exploded and partially burned. This evidence was sufficient for the jury to have determined that defendant's guilt of this offense was proved beyond a reasonable doubt.

Case No. 14015 concerned a fire alleged to have occurred on February

18, 1976. The only testimony tying defendant to the commission of that offense is Stevens' testimony that defendant said that he, defendant, had been to the Owens property twice. The proof here was insufficient.

In case No. 14012 defendant was charged with arson as to property of Joe Roberts. Roberts testified that a barn on his property was, without his permission, destroyed by fire on February 18, 1976. Carl Pence was shown to be the tenant on Roberts' property at the time of the fire. Defendant's admission, as related by Stevens, that he, defendant, had set fire to a chicken coop on "the Carl Pence place" in late November or early December 1975 is an insufficient basis for the jury to have determined beyond a reasonable doubt that defendant committed the February 18, 1976, offense.

Similarly, the evidence in case No. 14013 where defendant was charged with arson against the property of Evelyn Westerman was also insufficient. That charge concerned the burning of a corn crib also on February 18, 1976. The chief of the volunteer fire department answering the call to that fire testified that the fire appeared to have been set by igniting fuel oil and newspapers. The only evidence to link the defendant to this offense was the circumstantial evidence of his modus operandi as related in Stevens' testimony and that at the time of his arrest 2 weeks later, he had fuel oil and newspapers in his truck.

Prior to defendant's filing of a pretrial motion to suppress his confessions, the State had been ordered by the court to furnish to the defendant "any recorded statements made by the accused." The State did submit a four-page written report made by Stevens of his interview with defendant but no recordings of the conversation. During jury deliberations, the assistant prosecuting the case informed defense counsel that a tape recording of the interview had been found. The assistant testified that he had learned from Stevens just prior to Stevens' rebuttal testimony that Stevens had such a recording. In his post-trial motion, defendant cited as error the failure of the State to furnish the recordings. After hearing arguments and testimony as to the recordings, the trial judge denied the post-trial motion finding that the tapes supported Stevens' version of the interview, refuted defendant's version and contained no new evidence "that would support the granting of a new trial upon the basis of newly discovered evidence." He also found that the withholding of the tapes had been neither intentional nor wilful.

In *People v. Parton* (1976), 40 Ill. App. 3d 753, 354 N.E.2d 12, we discussed the genesis and subsequent application of the doctrine of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, requiring the State to produce for the accused information and documents which would be favorable to the accused's defense. We noted that in this state, Supreme Court Rule 412(d) (Ill. Rev. Stat. 1975, ch. 110A, par. 412(d))

requires that the production be made before trial so that the accused may use the information in preparing a defense. Recently in *United States v. Agurs* (1976), 427 U.S. 97, 106, 49 L. Ed. 2d 342, 351, 96 S. Ct. 2392, the court ruled that when an accused makes no request to the prosecutor for the information withheld or makes only a general request for *Brady* type information, a court is not required to reverse a conviction on Federal constitutional grounds unless the court finds that the withheld information would have sufficiently aided the defense so as to negate proof of the accused's guilt beyond a reasonable doubt. This appears to be the rule applied by the trial court here. The *Agurs* opinion further stated, however, that where, as here, the defendant has specifically requested the withheld information or object, error occurs if there is a substantial basis for claiming materiality of the information. The court noted, "When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." The court also commented that when information required to be produced is withheld, the good faith of the prosecutor is of little significance. In *People v. Elston* (1977), 46 Ill. App. 3d 103, 360 N.E.2d 518, we noted that Rule 412 requires the State to insure that a full flow of information from other law enforcement agencies is maintained so that required discovery can be given.

■■ The trial court's interpretation of the tapes was generally correct. They substantiated much of Stevens' testimony and refuted much of the defendant's. The defendant testified that Stevens had repeatedly told him that he, Stevens, would "go to hell and back to get him if he did not talk" while Stevens actually said once that he'd "track" him "to the end of the earth," if he lied to him. Stevens repeatedly told defendant he could make no promises but the tenor of his remarks, however, implied that if defendant told him what he, defendant, knew about the fires, he would try to get defendant some professional help that might limit his incarceration. Stevens also stated at one point:

"Chuck, you want to go the hard way? I've got all the evidence here I need. I can throw you up there in the slammer and let you lay there or you can cooperate with me and I can help you."

Obviously Stevens did not have sufficient information to convict defendant without his confession. In *People v. Griffith* (1976), 40 Ill. App. 3d 690, 353 N.E.2d 53, we noted that a confession would be suppressed if the will of the accused had been overcome by a knowingly false statement of an interrogating officer if the officer's falsehood was likely to produce an untrustworthy confession. The withheld tapes would accordingly have had some probative value both at the hearing on the motion on the question of the voluntariness of the confession and at trial on the question of the truthfulness of the confession. Since one of defendant's principal contentions was that his confession was not true,

information available only in the tapes was material within the meaning of *Agurs*. We need not determine whether the information would be likely to change the result. We can only conclude that defendant was denied a fair trial.

■■■ Since case No. 14014 will be retried, we deem it appropriate to comment upon defendant's claim that evidence of other offenses was improperly admitted. Evidence that defendant had an open can of beer in his car at the time of his arrest was irrelevant to any material issue in the instant case and should not be admitted even though defendant's claim of being intoxicated at the time negated any resulting prejudice. On the other hand, evidence that defendant had equipment for arson in his car on arrest, had attended a fire that night and had committed other arsons where he set fires to old buildings by using newspapers and kerosene all showed a common scheme and were admissible. *People v. Lehman* (1955), 5 Ill. 2d 337, 125 N.E.2d 506.

In each of the cases appealed, the conviction and sentence is reversed. In case No. 14014, the cause is remanded to the Circuit Court of Macon County for a new trial.

Convictions in Nos. 14012, 14013 and 14015 reversed. Conviction in No. 14014 reversed and remanded for new trial.

CRAVEN, P. J., and REARDON, J., concur.