THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CINDY L. BAUER, Defendant-Appellant.

Second District No. 2—07—1180

Opinion filed August 6, 2009.

---

Clifford E. Lund, of West Dundee, for appellant.

John A. Barsanti, State's Attorney, of St. Charles (Lawrence M. Bauer and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCHOSTOK delivered the opinion of the court:

Following a jury trial, the defendant, Cindy Bauer, was convicted of aggravated arson and was sentenced to six years' imprisonment. On appeal, the defendant argues that (1) she was denied the effective assistance of counsel; (2) the trial court erred in denying her motion to quash her arrest and suppress her statements; (3) she was not proven guilty beyond a reasonable doubt; and (4) she was deprived of a fair trial due to the cumulative errors at trial. We affirm.

## I. Background

On August 9, 2004, the defendant was charged by an amended indictment with two counts of aggravated arson (720 ILCS 5/20—1.1(a)(1) (West 2004)). The indictment alleged that on June 23, 2004, the defendant knowingly set fire to a building at 771 Hobart Drive in South Elgin while she knew that Mike Schroeder and James Gielow were present therein.

After being indicted for aggravated arson, the defendant filed a motion to quash her arrest and to suppress evidence. On March 18, 2005, the defendant filed a motion to suppress her statement. The defendant alleged that the statement she gave on June 24, 2004, was coerced.

On May 18, 2005, the trial court conducted a hearing on the defendant's motion to quash her arrest and to suppress evidence. Sergeant Randy Endean of the South Elgin police department testified that he was involved in the investigation of a fire that occurred on Hobart Drive in South Elgin on June 23, 2004. He arrived at the scene before 9:30 a.m. It appeared that the fire was deliberately set. Three people lived at the residence. Two of them had escaped the fire by jumping from a second-story window. The third person, the defendant, had been at the residence the night before and had been in an argument with one of the other residents. She currently could not be found. Sergeant Endean then obtained a description of the defendant and her vehicle.

At 11 a.m., Sergeant Endean left the fire scene with another officer in order to find the defendant. He returned to the police department and obtained a photo of the defendant. He also contacted the Elgin police department because the defendant's vehicle was registered to a home in Elgin. He went to that residence and talked to the defendant's son. The son did not know where the defendant was. Sergeant Endean also contacted the defendant's mother and her ex-husband. Neither of them knew where she was. However, her ex-husband suggested that the defendant might be with her sister in Rockford. After spending some time observing the residence in Elgin,

Sergeant Endean decided to drive toward Rockford. At approximately 4:45 p.m., while near Elgin High School, he observed a vehicle that matched the description of the defendant's vehicle. The driver of the vehicle also resembled the photo of the defendant.

Based on his observations, Sergeant Endean activated the lights on his unmarked police car behind the defendant's vehicle. The driver of the vehicle was in fact the defendant. He asked that the defendant accompany two other officers to the police station, and she agreed to do so. He did not see her again after arriving at the police station.

Detective Anthony Martinez of the South Elgin police department testified that he participated in the investigation of the fire. In speaking with Lieutenant Erickson of the South Elgin fire department, he learned that the fire was suspicious. Lieutenant Erickson believed that an accelerant, such as lighter fluid, had been used to start the fire. Detective Martinez also talked to Mike Schroeder, one of the people who lived where the fire had occurred. Schroeder indicated that only three people had keys to the area where the fire had started— himself, Gielow, and the defendant. The fire started at the base of the stairway leading up to Schroeder's and Gielow's bedrooms. Both Schroeder and Gielow jumped out of a second-story window to avoid the fire.

Following this testimony, the State moved for a directed finding. Following argument, the trial court granted the State's motion for a directed finding, concluding that the police had probable cause to detain the defendant.

Between July 14 and October 6, 2005, the trial court conducted a hearing on the defendant's motion to suppress her statement. Detective Martinez testified that he first talked to the defendant at 5:55 p.m. on June 23, 2004. He explained to her that she was not under arrest but was being detained for questioning in regard to a fire. He advised her of her *Miranda* rights. He talked with her for an hour. He talked with her again on June 24 at 1:44 a.m. for 30 minutes and then, later that day at 6 p.m., a third time for 10 to 15 minutes. While she was at the police station, she was given food and allowed to sleep. She did not request to speak with an attorney or her family. He did not make any promises to her that the charges against her would be lessened if she cooperated with the police. After the third interview, she agreed to provide a statement acknowledging her involvement in the fire.

The defendant testified that Detective Martinez told her that the police knew she started the fire, so she should go ahead and admit it. He further told her that if she admitted to starting the fire, he would ensure that the charges against her would be lessened, such that she

would receive no more than probation or one year in jail. The defendant insisted that she had not started the fire and she requested to speak with an attorney. Detective Martinez then requested to know who her attorney was. After she indicated she did not have one, he asked her, "Then, how can I call him[?]" The defendant then indicated she did not want to talk anymore, and she was returned to her holding cell.

Detective Martinez subsequently brought her out of the holding cell for additional questioning. Detective Amy Palazzo was also present. Detective Martinez continued to make promises that if she confessed to starting the fire, he would ensure that the charges against her were lessened. Later, Detective Martinez left the room and Detective Palazzo made the same promises to her. She subsequently agreed to make a statement.

On cross-examination, the defendant acknowledged that in giving her taped statement, she stated that Detectives Martinez and Palazzo had treated her fairly. She acknowledged that she was giving the statement under her own free will and did not reference any promises having been made to her.

Detective Palazzo testified that she participated in all three of the interviews with the defendant. During these interviews, the defendant never invoked her right to remain silent nor did she request to speak with an attorney. Furthermore, Detective Palazzo testified that there were never any promises made to the defendant that the charges would be reduced if she acknowledged starting the fire.

Following the hearing, the trial court denied the defendant's motion to suppress her statement.

The trial court conducted a jury trial between December 11 and December 13, 2006. Schroeder testified that he and the defendant lived together for a year and that they and Gielow leased a townhouse, Unit B, at 771 Hobart in South Elgin. Schroeder and the defendant had broken up, but they were still living together. On the night of June 22, 2004, they drank until about 4 a.m. Gielow then went to bed while Schroeder and the defendant argued over money. The defendant left the residence at about 5 a.m. Schroeder believed that he then locked the front door. Only he, Gielow, and the defendant had a key to the front door. Schroeder and Gielow were asleep upstairs until smoke woke them at approximately 9 a.m.

Kelly Diaz testified that at approximately 9 a.m. on June 23, 2004, she observed smoke coming out of a window at 771 Hobart Unit B. She called 911. She also observed someone exiting from an upper window.

Lieutenant Todd Erickson of the South Elgin fire department testified that upon entering the residence, he observed fire damage in the stairwell leading up to the second floor. He also observed smoke damage to the main level of the house. He further testified that he discovered a can of lighter fluid lying on the floor in the dining room. After examining the various levels of fire damage in the house, he believed that the fire had started at the base of the stairs. In determining the cause of the fire, he ruled out natural causes, electrical causes, and any appliances in the house. After ruling out these possible causes, in conjunction with having found the can of lighter fluid, he determined that the fire was of suspicious origin. He therefore contacted the Kane County Fire Investigation Task Force to take over the investigation.

Sergeant Kevin Tindall of the Kane County Fire Investigation Task Force testified that he is trained to determine the origins of fires. He believed that the point of origin of this fire was the stairs and that an accelerant had been used to intentionally set the fire. He explained that if a match or a cigarette were dropped on a fire-retardant or fire-resistant carpet, it would typically burn just a spot in the carpet and not spread across the floor. However, if an accelerant were used, that would lead to a rapid, but not instantaneous, burning process. The fire would melt the carpet and then continue to burn its way up the stairs as well as filter down the stairs. Sergeant Tindall further explained that after the fire flamed up, it might have then died down. He explained, however, that the fire would not completely go out until it had burned through the carpeting, padding, and wood on the stairs.

The State introduced into evidence the defendant's taped statement. The tape was played for the jury, who followed along with a transcription of the tape. In her statement, the defendant acknowledged that she had been fighting with her ex-boyfriend, Schroeder. She left the townhouse at 5 a.m. and then returned at 8 a.m. She used her key to enter the townhouse. The defendant indicated that she knew that Schroeder and Gielow were upstairs sleeping. The defendant proceeded to the garage. She saw that Schroeder's car was there. She then took a can of lighter fluid from the garage, reentered the house, and sprayed lighter fluid on the dining room table and in the living room. She also stood at the base of the stairs and squirted lighter fluid half-way up the stairs. She then took three fireplace matches, struck them, walked over to the stairway, and dropped them on the third step. A fire then started. As she saw the flame, she thought to herself, "this is crazy, I can't do this." She then decided to put it out. However, after watching the area for a couple of minutes, she did not see any flames. She also believed that the carpet was fire-resistant. Believing that the fire had gone out, she did not take any actions to smother it. She then left the townhouse.

At the close of the trial, the jury found the defendant guilty of two counts of aggravated arson. The defendant subsequently filed a post-trial motion, primarily asserting that she had been deprived of the effective assistance of counsel. On September 26, 2007, the trial court conducted a hearing on the motion. Attorney John Clarke, who represented the defendant at trial, testified that he did not submit any jury instructions but instead relied on the instructions the State tendered. Clarke acknowledged that a mistake-of-fact instruction would have been appropriate if the defendant had made a mistake of fact. However, he did not believe that such an instruction was appropriate, because her belief that the fire had gone out did not constitute a "fact." Clarke further acknowledged that he had not contacted any experts on the defendant's behalf. Clarke also acknowledged that he had not submitted any case law to the trial court on the issue of the gaps in the defendant's audiotaped statement.

Following the hearing, the trial court denied the defendant's post-trial motion. The trial court subsequently vacated one of the defendant's two convictions of aggravated arson and sentenced the defendant to six years' imprisonment on the other count. The defendant thereafter filed a timely notice of appeal.

## II. Ineffective Assistance of Counsel

The defendant's first contention on appeal is that she was deprived of the effective assistance of counsel. Specifically, the defendant claims that her counsel was ineffective because he failed to (1) argue that the defendant's tape-recorded statement was inadmissible because it had inaudible portions; (2) file a motion to dismiss based on one-act, one-crime principles; (3) present arguments and instructions on mistake of fact; (4) present instructions on residential arson; (5) obtain expert witnesses to support the claim that the defendant believed the fire was out when she left the residence; and (6) tender a complete file to the attorney who replaced him.

We observe that a claim of ineffective assistance of counsel is judged according to the two-prong, performance-prejudice test established in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). *People v. Lawton*, 212 Ill. 2d 285, 302 (2004); *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). To obtain relief under *Strickland*, a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance caused prejudice by creating a reasonable probability that, but for counsel's errors, the trial result would have been different. *People v. Boyd*, 363 Ill. App. 3d 1027, 1034 (2006).

We will address each of the defendant's arguments in turn.

## A. Inadmissibility of Audiotape

The defendant argues that the admission of the audiotape of her statement constituted reversible error because the 125 inaudible portions of the tape rendered it untrustworthy. The defendant contends that her counsel was ineffective for not objecting to the admissibility of the audiotape.

A partially inaudible sound recording is admissible unless the inaudible portions are so substantial as to render the recording untrustworthy as a whole. The admission of a recording that is partially inaudible, or that reproduces only part of a statement or conversation, is a matter within the trial court's discretion. *People v. Manning*, 182 Ill. 2d 193, 212 (1998).

■ We do not believe the trial court abused its discretion in allowing the audiotape of the defendant's statement to be admitted into evidence. We have reviewed the audiotape of the defendant's statement as well as the transcript of that statement. The transcript indicates approximately 125 areas where the transcriber could not understand what the defendant or the person who was interviewing her, Kane County Assistant State's Attorney Joe Lewand, was saying. Upon careful review of the tape, we are able to understand most of the comments that the transcriber determined were inaudible. Regarding those comments that we cannot discern, we find that they do not undermine the totality of the tape so as to render it untrustworthy. Specifically, the inaudible portions of the tape do not interfere with understanding the defendant's explanation of what happened on the day in question. See *Manning*, 182 Ill. 2d at 212. Furthermore, we note that, from our review of the tape, there is no indication that the tape was tampered with. As the tape was not improperly admitted, defense counsel was not ineffective for not objecting to its admission.

## B. Failure to File Motion to Dismiss Based on One-Act, One-Crime Principles

■ The defendant next argues that her counsel was ineffective for failing to file a motion to dismiss one count of the indictment alleging aggravated arson. The defendant argues that she could not have been convicted of both crimes, because they arose from the same act. See *People v. King*, 66 Ill. 2d 551, 566 (1977).

Following the defendant's trial, the trial court vacated one of the defendant's convictions of aggravated arson. The defendant was therefore sentenced on only one count of aggravated arson. The defendant does not explain how she was prejudiced by the fact that the trial court dismissed one count after trial rather than before trial.

Absent any demonstration of prejudice, the defendant is not entitled to any relief on this point. See *Boyd*, 363 Ill. App. 3d at 1034.

## C. Failure to Submit Jury Instruction as to Mistake of Fact

■ The defendant argues that the theory of her defense was that she believed that the fire had gone out before it caused any damage. She therefore contends that her counsel should have submitted a mistake-of-fact instruction to the jury. Had this instruction been given, the defendant argues, the jury would have acquitted her. The defendant therefore argues that her counsel was ineffective for not seeking to tender that instruction to the jury. The defendant additionally argues that the trial court should have *sua sponte* submitted such an instruction to the jury.

The purpose of jury instructions is to provide jurors with correct principles of law that apply to the evidence that has been submitted to them. *Gaines v. Townsend*, 244 Ill. App. 3d 569, 576 (1993). A defendant is entitled to an instruction on his theory of the case if there is some foundation for the instruction in the evidence, and if there is such evidence, it is an abuse of discretion for the trial court to refuse to so instruct the jury. *People v. Jones*, 175 Ill. 2d 126, 132 (1997). Where instructions are not supported by either the evidence or the law, the instructions should not be given to the jury. *People v. Simester*, 287 Ill. App. 3d 420, 431 (1997). Moreover, a defendant's belief in a "mistaken fact" must be reasonable. *Jones*, 175 Ill. 2d at 132.

We believe that the instruction the defendant argues her trial counsel should have submitted is not an instruction supported by law. To sustain a conviction of aggravated arson, the State must show (1) that the defendant committed an arson, by means of fire or explosive, and knowingly damaged the real property of another; and (2) knew or reasonably should have known that one or more persons were present in the building that was being damaged. 720 ILCS 5/20—1, 20—1.1 (West 2004).

Here, the defendant committed arson when she spread lighter fluid in the residence and set it on fire, causing damage to the residence. Her actions rose to the level of aggravated arson, because she knew, or should have known, that people were in the residence when she set the fire. The defendant's commission of aggravated arson was complete when she dropped the match starting the fire. Her belief as to whether the fire subsequently went out or whether the fire caused any damage is simply not relevant and therefore cannot absolve her from any criminal liability. *Cf. People v. Cundiff*, 16 Ill. App. 3d 267, 271-72 (1973) (crime of deceptive practices is complete when the

making, delivery, or uttering of the check takes place and it is immaterial whether payment or restitution is subsequently made). Accordingly, defense counsel was not ineffective for not requesting that such an instruction be submitted. For these same reasons, the trial court did not err in not *sua sponte* tendering such an instruction to the jury.

## D. Failure to Obtain Expert to Support the Defendant's Theory of the Case

■ The defendant's next argument is that her defense counsel should have obtained an expert to support her theory of the case, that she believed that the fire had gone out before she left the townhouse. The defendant argues that such testimony would have been critical to her defense. However, as explained above, the defendant completed the offense of aggravated arson when she started the fire in the residence while she knew, or reasonably should have known, that others were present in the residence. Her belief that the fire subsequently went out and that it did not cause any damage was not a valid defense to the charge of aggravated arson. Thus, her counsel was not ineffective for not finding an expert to testify that her belief that the fire had gone out was reasonable.

Furthermore, even if the defendant's theory provided a valid defense for her actions, we note that the defendant presented no evidence that such an expert in fact existed who would testify in support of her theory. Indeed, appellate counsel, when representing the defendant on her posttrial motion, did not submit an offer of proof as to how an expert would have testified on her behalf. As this court will not speculate as to whether such an expert could have been found, we will not find trial counsel ineffective on this basis. See *People v. Jones*, 121 Ill. App. 2d 268, 273 (1970) (where defendant did not submit an offer of proof to the trial court as to what witness's testimony would have been, reviewing court would not speculate on appeal what testimony may have been).

## E. Failure to Seek Jury Instruction for Residential Arson

■ The defendant argues that her defense counsel should have requested a jury instruction for residential arson, which she argues is a lesser included offense of aggravated arson. The defendant insists that her counsel's failure to do so amounted to ineffective assistance of counsel. The defendant further argues that the trial court erred in not *sua sponte* tendering such an instruction to the jury.

In order to be entitled to a lesser-included-offense jury instruction as to residential arson, the defendant must establish that: (1) based on the charging instrument, residential arson is a lesser included offense of aggravated arson (*People v. Bussan*, 306 Ill. App. 3d 836, 839 (1999));

and (2) the evidence at trial is such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit her of the greater (*People v. Medina*, 221 Ill. 2d 394, 405 (2006)). As applicable to the facts of this case, aggravated arson involves (1) the damaging of a building by arson while (2) one knows, or reasonably should know, that one or more people are present in that building. 720 ILCS 5/20—1.1(a)(1) (West 2004). Residential arson involves damaging a building that is the dwelling place of another by arson. 720 ILCS 5/20—1.2 (West 2004).

Here, even if we were to determine that the residential arson was a lesser included offense of aggravated arson, the defendant would not be entitled to a lesser-included-offense jury instruction for residential arson. This is because, based on the evidence in this case, a rational jury could not have found the defendant guilty of residential arson yet acquitted her of aggravated arson. In her statement, the defendant acknowledged that she knew Schroeder and Gielow were upstairs sleeping immediately before she started the fire in the building, shortly after 8 a.m. The defendant's knowledge that people were in the townhouse is consistent with her statement that Gielow went to bed at 4 a.m. and that Schroeder was arguing with her until 5 a.m. This part of the defendant's statement was corroborated by Schroeder's testimony. The jury could infer that since Schroeder and Gielow had not gone to bed until three or four hours before the fire started, the defendant knew or should have known at the time she set the fire that there would likely be people sleeping in the residence. This inference was further supported by the defendant's statement that she observed that Schroeder's car was still in the garage, thus suggesting he had not left the residence. In considering the defendant's statement, the logical inferences therefrom, and the other evidence at trial, we do not believe that the jury could rationally determine that the defendant neither knew nor reasonably should have known that people were present in the building when she started the fire. Thus, the defendant was not entitled to a lesser-included-offense instruction for residential arson. See *Medina*, 221 Ill. 2d at 405. Accordingly, defense counsel was not ineffective for not requesting that such an instruction be given to the jury. For these same reasons, the trial court did not err in not *sua sponte* tendering a lesser-included-offense instruction to the jury.

F. Failure to Tender a Complete File to the Replacement Attorney

■ The defendant additionally argues that her defense counsel was ineffective for not tendering his complete case file to the attorney who represented her on her posttrial motion. Specifically, the defendant claims that the file her defense counsel tendered "had no section for

jury instructions and contained no research for jury instructions, lesser-included offenses, or the defense of mistake."

In making this argument, the defendant does not explain how she was prejudiced. Absent any demonstration of prejudice, we cannot find that defense counsel was ineffective on this point. See *People v. Spence*, 188 Ill. App. 3d 761, 766 (1989) (court of review will not presume that prejudice exists as it is the defendant's burden to demonstrate prejudice and to establish that there was a reasonable possibility that the error, in light of all the evidence, was a material factor in his conviction).

### III. Whether Defendant's Arrest Should Have Been Quashed and Her Statement Suppressed

The defendant argues that the trial court erred in denying her motion to quash her arrest. Specifically, the defendant argues that her arrest was improper because she was arrested without a warrant and there were no exigent circumstances that justified a warrantless arrest. Because her arrest was improper, the defendant further insists, her statement should have been suppressed. The defendant additionally argues that her statement should have been suppressed because it was involuntary.

It is well settled that a police officer may effect a valid, warrantless arrest so long as probable cause to arrest exists. *People v. Kidd*, 175 Ill. 2d 1, 22 (1996). Probable cause to arrest exists where the facts and circumstances known to the police officer at the time of the arrest are sufficient to warrant a person of reasonable caution to believe that an offense had been committed and that the offense was committed by the person arrested. *People v. Sims*, 192 Ill. 2d 592, 614 (2000). Mere suspicion is inadequate to establish probable cause to arrest, but the evidence relied upon by the arresting officers does not have to be sufficient to prove guilt beyond a reasonable doubt. *Kidd*, 175 Ill. 2d at 22. The existence of probable cause is determined by the totality of the circumstances at the time of the arrest. *Sims*, 192 Ill. 2d at 615. Further, a determination of probable cause is governed by common-sense, practical considerations, and not by technical legal rules. *Sims*, 192 Ill. 2d at 615.

■ After examining the totality of the circumstances known to the police officers when the defendant was apprehended, we conclude that the officers had probable cause to effectuate an arrest. The record shows that the detectives were aware that the fire appeared to have been deliberately set. There had been three residents living at the townhouse where the fire had been set. Two of them (Schroeder and Gielow) had jumped from a second-story window as a result of the fire.

The third resident, the defendant, was missing. The police were also aware that the defendant had recently had a fight with Schroeder. Moreover, it appeared that all of the entry doors to the townhouse had been locked. Other than Schroeder and Gielow, the only person with a key to the townhouse was the defendant. The detectives subsequently spent several hours looking for the defendant. They ultimately found her traveling near the house where her car was registered. Based upon the information known to them, the police officers had probable cause to arrest the defendant.

In so ruling, we note that the instant case is analogous to *People v. James*, 255 Ill. App. 3d 516, 525 (1993). In *James*, the reviewing court found that probable cause existed to arrest the defendant for the arson of his ex-girlfriend's apartment based on the facts that (1) the fire appeared to have been deliberately set; (2) the defendant was able to enter the victim's apartment without being "buzzed in" and he once had keys to the apartment; (3) the victim and the defendant had a fight, which caused the victim to ask her ex-husband to drive her to her mother's house; and (4) the ex-husband saw the defendant on the street in front of the apartment half an hour before the fire started. *James*, 255 Ill. App. 3d at 525. The reviewing court determined that although these facts alone were not necessarily enough to convict the defendant, they were enough to justify the police arresting the defendant. *James*, 255 Ill. App. 3d at 525. Here, as in *James*, (1) the fire appeared to have been deliberately set; (2) the defendant had access to the home; and (3) the defendant and one of the other residents had had a fight shortly before the fire had started. Based on these facts, as in *James*, the police had probable cause to arrest the defendant.

Since the defendant's arrest was not improper, her argument that her statement should have been suppressed as the fruit of an unlawful arrest is without merit. We therefore turn to her argument that her statement should have been suppressed because it was involuntary. The defendant claims that her statement was involuntary because the police (1) promised her leniency; (2) did not mention the seriousness of her offense; and (3) held her for two days before she gave her statement.

Whether a statement is given voluntarily depends on the totality of the circumstances. *People v. Melock*, 149 Ill. 2d 423, 447 (1992). The question is whether the statement was made freely, voluntarily, and without any compulsion or inducement of any sort, or whether the defendant's will was overcome when he confessed. *People v. Clark*, 114 Ill. 2d 450, 457 (1986). Factors to be considered include (1) the defendant's age, intelligence, education, experience, and physical

condition at the time of the detention and interrogation; (2) the duration of the interrogation; (3) the presence of *Miranda* warnings; (4) the presence of any physical or mental abuse; and (5) the legality and duration of the detention. *People v. Slater*, 228 Ill. 2d 137, 160 (2008). The accused's emotional state and experience in criminal matters are also relevant. *People v. Stevens*, 188 Ill. App. 3d 865, 876 (1989). The trial court's finding on a question of the voluntariness of a confession will not be reversed unless it is against the manifest weight of the evidence. *People v. McDaniel*, 249 Ill. App. 3d 621, 634-35 (1993).

After considering the totality of the circumstances, we believe that the defendant's statement was voluntary. The defendant was brought to the South Elgin police department on June 23 and interrogated at 5:55 p.m. for an hour. She was interrogated again on June 24 at 1:44 a.m. for 30 minutes and then at 6 p.m. for 10 to 15 minutes before consenting to give a statement. Before each interview, the defendant was given *Miranda* warnings. She was given food and allowed to sleep while at the police station. Although the defendant claims that she requested to speak with an attorney during the questioning, this testimony was contradicted by the police. The police also contradicted the defendant's testimony that she gave her statement only after they promised that they would seek to ensure that the charges against her were lessened so that she would receive no more than probation or one year in jail. As the trial court was free to reject the defendant's self-serving testimony that was contradicted by the police officers' testimony (see *People v. Irvine*, 379 Ill. App. 3d 116, 123 (2008)), there is nothing in the record to suggest that her statement was given involuntarily.

Furthermore, the defendant's assertion that the officers had to inform her of the seriousness of her offense is without merit. There is simply no requirement under Illinois law that the police must provide such information to the defendant. See *Slater*, 228 Ill. 2d at 160 (listing factors that are to be considered in determining whether defendant voluntarily gave statement). Rather, we believe that the officers' failure to advise the defendant of the seriousness of the offense would be relevant only if, due to the defendant's age, intelligence, education, experience, or physical condition, she was not able to appreciate the nature of the offense. See *Slater*, 228 Ill. 2d at 160. The defendant does not contend that she had any such shortcomings. Thus, there is no reason to find her statement involuntary due to the failure of the police to inform her of the seriousness of her offense.

### IV. Proof of Guilt Beyond a Reasonable Doubt

■ The defendant next contends that the State failed to prove her guilty beyond a reasonable doubt. Specifically, the defendant argues

that because she believed that the fire had gone out before she left the residence and that the fire did not cause any damage, she did not have the requisite intent to commit arson.

It is not the province of this court to retry the defendant. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The relevant question is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261, quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). The sufficiency of the evidence and the relative weight and credibility to be given the testimony of the witnesses are considerations within the exclusive jurisdiction of the fact finder. *People v. Jimerson*, 166 Ill. 2d 211, 214 (1995). The evaluation of the testimony and the resolution of any conflicts or inconsistencies that may appear are also wholly within the province of the finder of fact. *Collins*, 106 Ill. 2d at 261-62.

In resolving the defendant's previous contentions, we have already explained that the defendant's belief that the fire went out after she started it is not relevant to the charge of aggravated arson. Thus, in light of the totality of the evidence, there was sufficient evidence to convict the defendant of aggravated arson. Schroeder testified that he lived in the townhouse with Gielow and the defendant. Only he, Gielow, and the defendant had a key to the townhouse. Schroeder testified that he argued with the defendant on June 23, 2004, until approximately 5 a.m. when she left the townhouse. Gielow had gone to bed at 4 a.m. The defendant acknowledged in her statement that she had been arguing with Schroeder on the day in question. Upon returning to the townhouse approximately three hours later, the defendant went to the garage and saw that Schroeder's vehicle was there. She took some lighter fluid from the garage and sprayed it on the stairs leading to the upstairs bedrooms. She then used three matches to ignite the lighter fluid. When she did this, she knew that Gielow and Schroeder were in the townhouse. The defendant's statement was corroborated by Lieutenant Erickson, who found burn marks on the stairs leading to the upstairs bedrooms. He also found a can of lighter fluid on the dining room floor. Furthermore, Lieutenant Erickson testified that the fire had caused smoke damage on the main floor of the townhouse. Sergeant Tindall testified that the defendant would have caused burn damage to the carpet as soon as she dropped the matches on the carpet. This evidence, when considered in the light most favorable to the State, was sufficient to convict the defendant beyond a reasonable doubt of aggravated arson.

In arguing that the evidence was insufficient to convict her, the defendant relies on *In re D.A.*, 114 Ill. App. 3d 522, 524-26 (1983), *People v. Abendroth*, 52 Ill. App. 3d 359, 361-62 (1977), and *People v. Hougas*, 91 Ill. App. 2d 246, 247-50 (1968). In each of those cases, the reviewing court reversed the defendant's conviction of arson after determining that other evidence in the case was insufficient to corroborate the defendant's confession. *D.A.*, 114 Ill. App. 3d at 524-26; *Abendroth*, 52 Ill. App. 3d at 361-62; *Hougas*, 91 Ill. App. 2d at 247-50. All of these cases are distinguishable from the case at bar. First, the defendant here is not denying that she started the fire. Second, even if she were, as set forth above there was ample evidence to corroborate the defendant's statement that she started the fire. Thus, none of the above cases provides a basis to set aside the jury's verdict.

## V. Cumulative Errors

■ The defendant's final contention on appeal is that the cumulative errors in this case deprived her of a fair trial. However, as we have determined that the defendant's prior contentions of error are without merit, then her last contention necessarily fails as well. *People v. Smallwood*, 224 Ill. App. 3d 393, 409 (1991) (where there is no reversible error on any individual issue, these issues cannot cumulatively warrant a new trial).

## VI. Conclusion

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

BOWMAN and O'MALLEY, JJ., concur.