THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES ROGERS, Defendant-Appellant.

Second District   No. 2—88—0363

Opinion filed August 15, 1989.

128

Grief, Bus & Blacklidge, of West Chicago (Dalton P. Grief, of counsel), for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Kevin T. McClain, of Immel, Zelle, Ogren, McClain, Germeraad & Costello, of Springfield (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Charles Rogers, was convicted of one count of unlawful delivery of 30 or more grams of a substance containing cocaine (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(a)(2)) and two counts of unlawful delivery of between 10 and 30 grams of cocaine (Ill. Rev. Stat. 1985, ch. 56½, par. 1401(b)(2)). Defendant raises the following contentions on appeal: (1) that tape recordings of conversations between him and a government informant were erroneously admitted into evidence; (2) that the trial court improperly permitted the jury to examine transcripts of the taped conversations prepared by the State while the recordings were being played; (3) that the trial court erred by denying his motion to call a certain individual as a court's witness; (4) that the trial court erroneously prevented him from bringing out certain evidence on cross-examination and during his case in chief; (5) that the prosecution violated a court order forbidding presentation of evidence concerning drug sales to informant Kathe Hoare by individuals other than defendant or by defendant prior to December 1986; and (6) that defendant was prejudiced by several improper statements made by the prosecuting attorneys. We affirm.

The charges against defendant arose from cocaine purchases allegedly made by Kathe Hoare at the Rustic Lounge just outside West Chicago in unincorporated Du Page County on December 16, 1986, December 29, 1986, and January 30, 1987. Defendant was the manager of the lounge and lived with his family in an apartment on the

premises. At the time the alleged cocaine purchases were made, Hoare was working as an informant for the Du Page County Metropolitan Enforcement Group (DUMEG). Hoare was incarcerated at the Du Page County jail on deceptive-practice charges when she agreed to become an informant. She had four prior felony convictions, having been convicted of deceptive practices in 1979, 1981, and 1987, and theft in 1981. At the time of defendant's trial, Hoare had 13 charges pending against her in Du Page County and other counties, primarily for deceptive practices. Hoare admitted that she used cocaine on a regular basis until she became a DUMEG informant in early December 1986.

Tape recordings of numerous conversations between Hoare and defendant at the Rustic Lounge in December 1986 and January 1987 were admitted into evidence. On each of the dates on which a recorded conversation was obtained, the following events occurred. Hoare first met with DUMEG and Illinois State police agents at the West Chicago police station. Hoare and her clothing were searched by a female police officer. Agents searched Hoare's red pickup truck. No illegal drugs or other contraband were found in any of these searches. On most of the occasions, Hoare was then outfitted with both a Nagra reel-to-reel recorder and an RF transmitter, which enabled agents parked nearby in a van to monitor the conversations. After January 20, Hoare was outfitted with only the RF transmitter.

On each of the dates, Hoare drove to the Rustic Lounge in her red pickup truck after leaving the police station. Agents in a van and in a car followed her to the lounge and parked nearby. The agents in the van were able to overhear and monitor Hoare's conversations. When Hoare left the lounge in her pickup truck, she returned to the West Chicago police station. The agents in the van and car followed her. After she arrived, Hoare, her clothes, and her truck were searched once again. The only dates that Hoare possessed contraband upon her return from the lounge were December 16, December 29, January 20, and January 30.

On each of the above dates, Hoare possessed plastic baggies containing a substance. She identified four exhibits as the contraband she possessed on those dates and testified that she received the contraband from defendant. Laura Mitacek, a chemist with the Du Page County sheriff's office, testified that each of the plastic baggies purportedly given to Hoare by defendant had a substance inside which contained cocaine. The substance turned over by Hoare on December 16 weighed 26.57 grams. The substance which she turned over on December 29 weighed 27.89 grams. The two plastic baggies which

she turned over on January 30 contained a substance weighing 55.59 grams. Hoare testified that defendant gave her the plastic baggies containing these substances on the above dates after she paid him. Defendant denied making these deliveries to her. On January 20, defendant gave Hoare a plastic bag containing 1.83 grams of cocaine, purportedly as a sample for a larger proposed transaction which was never consummated. Defendant was not charged with this delivery. He admitted giving Hoare this small sample of cocaine on January 20, but stated it was cocaine that Hoare had previously given to him.

Hoare testified that she listened to each of the tape recordings admitted into evidence and that the recordings accurately depicted the conversations that took place between her and defendant on the dates in question. While the tapes were being played in court, the trial judge permitted the jury to use written transcripts of the conversations prepared by the State as a guide. Hoare and DUMEG Agent James O'Brien both testified that they assisted in the preparation of the transcripts and that the transcripts accurately described the conversations between Hoare and defendant on the dates in question. O'Brien testified that he monitored many of the conversations in the van parked near the lounge and that he listened to all the tapes. Hoare testified that DUMEG Agent Michael Sullivan and two assistant Du Page County State's Attorneys assisted her in the preparation of the transcripts. The trial judge admonished the jury that the transcripts were not evidence and were only provided to assist the jury in listening to the tapes, which were evidence.

Defendant acknowledged during his testimony that he discussed potential cocaine sales to Kathe Hoare during many of the recorded conversations. Defendant stated, however, that he believed the West Chicago police were trying to set him up on a drug bust because of a lawsuit he had filed in Federal court against the City of West Chicago, its police chief, West Chicago police officer Jerome Dolan, and other defendants. Defendant testified that he decided to play along when Hoare asked to buy cocaine from him in an effort to determine who was setting him up. Defendant also presented evidence concerning Hoare's poor reputation for honesty and her cocaine use. This included testimony from defendant's brother, Michael Sigler, that, in his opinion, Hoare was a cocaine addict between November 1986 and February 1987.

The jury found defendant guilty on all three counts. The trial court denied defendant's post-trial motion and sentenced him to concurrent terms of imprisonment of eight years, four years, and four years on the three counts. Defendant now appeals.

■■ ■ Defendant first argues that it was error for the trial court to admit the tape recordings into evidence. Defendant contends that the State did not provide a sufficient foundation for admission of the tapes and that their admission was improper because many of the comments made were inaudible or unintelligible.

An adequate foundation exists for the admission of tape recordings into evidence if a witness to the conversation testifies that the tape accurately portrays the conversation in question. (*People v. Williams* (1985), 109 Ill. 2d 327, 338; *People v. Gaurige* (1988), 168 Ill. App. 3d 855, 863.) Kathe Hoare, a witness to each conversation, testified that all of the tapes accurately portrayed the conversations in question. The State provided an adequate foundation for the admission of the tapes.

■■ ■ Additionally, a partially inaudible tape recording is admissible unless the inaudible portions are so substantial as to render the recording untrustworthy as a whole. (*People v. Dougherty* (1987), 160 Ill. App. 3d 870, 876.) The admission of a partially inaudible recording or a recording that depicts only a portion of a conversation is a matter within the trial court's discretion. (*Dougherty*, 160 Ill. App. 3d at 876.) While some portions of the tape recordings are inaudible, our review of the tapes indicates that those portions are not so substantial as to render the recordings untrustworthy as a whole. The trial court did not abuse its discretion by admitting the tapes into evidence.

■■ ■ Defendant also argues that the jury should not have been permitted to review transcripts of the recordings prepared by the State while the tapes were being played. It is proper, however, for a trial court to permit the jury to use written transcripts of recorded conversations in order to assist them while they listen to the conversations. (*People v. Spicer* (1978), 61 Ill. App. 3d 748, 759, *rev'd on other grounds* (1979), 79 Ill. 2d 173.) Here, as in *Spicer*, the transcripts were used solely for this limited purpose and were collected from the jurors after they listened to the tapes. In *Spicer*, the court stated it would be a better practice for the trial court to admonish the jury as to the purpose of the transcripts and instruct the jury to determine for itself the events transpiring on the tape. (61 Ill. App. 3d at 759.) In the present case, the trial judge admonished the jury that the transcripts were not evidence, but were only to be used for assistance while the jurors listened to the tapes, which were in evidence.

Defendant's reliance upon *People v. Melchor* (1985), 136 Ill. App. 3d 708, is misplaced. In *Melchor*, tape recordings of certain conversa-

tions were admitted into evidence. There was no testimony, however, establishing the authenticity of the transcripts or the identity of the speakers on the tapes. As the court pointed out, since the identity of the speakers was never established, the tapes did not prove defendant committed the crime. *Melchor*, 136 Ill. App. 3d at 712.

The court ruled in *Melchor* that defendant suffered unfair prejudice from the use of the unauthenticated transcripts under these circumstances because the transcripts identified the alleged speakers in the left-hand column, and the trial court admonished the jury that they were merely to be used as an aid "for the limited purpose of assisting the jury in *what* was said at that time and *who* said it." (Emphasis in original.) (136 Ill. App. 3d at 713.) The court further stated that by giving the above admonition, the trial court added its credibility to the unauthenticated transcript. 136 Ill. App. 3d at 714.

The *Melchor* court distinguished *Spicer* on the basis that in *Spicer*, a witness was presented to testify to the accuracy of the transcript, and defendant did not dispute its accuracy. (136 Ill. App. 3d at 714.) Here, as in *Spicer*, a witness testified that the transcripts accurately portrayed the conversations in question. That witness was Kathe Hoare, who was present for each of the conversations, who testified that she listened to the tapes and transcripts, and who also testified that she assisted in the preparation of the transcripts. Since Hoare was present at each recorded conversation and she testified that the transcripts were accurate, there was a sufficient foundation for use of the transcripts. See *People v. Dogoda* (1956), 9 Ill. 2d 198, 202 (police officer's testimony that transcript of defendant's statement was accurate sufficient to render transcript admissible when officer was present at time of statement).

The problem in *Melchor* was that the tapes did not tend to prove defendant was guilty of the crime because the speakers were never identified. The unauthenticated transcripts were then used improperly to link defendant to the crime. This problem is not present here because Kathe Hoare's testimony authenticated the transcripts and identified the speakers on the tapes. *Melchor* is therefore inapposite.

■ Defendant also complains of alleged inaccuracies in the transcripts. He points out that the transcript for January 30, 1987, quotes Kathe Hoare as saying, "You gonna count out the money?" Defendant's position is that Hoare actually said, "Now you are out the money," meaning there was no deal. When defendant's attorney asked Agent O'Brien if he heard Hoare make the latter statement when he listened to the tape, O'Brien said yes. Hoare denied making this statement, however, and instead testified that she asked if

defendant was going to count out the money.

We are unable to determine from reviewing the tapes what Hoare said on this occasion. It is difficult to determine how defendant was prejudiced by the use of the transcripts with regard to the jury's determination as to what Hoare actually said. Hoare had an independent recollection of what she said and testified concerning the same. O'Brien's testimony that he recalled hearing something else on the tape was brought to the jury's attention. Furthermore, the jury listened to the tapes. In our review of the tapes and transcripts, we have noted some minor inaccuracies in the transcripts, none of which were severe enough to result in any prejudice to defendant. The trial court did not err by permitting the jury to use the transcripts.

Defendant next contends that the trial court erred by denying his motion to call Harry Gangestad, a former cook at the Rustic Lounge, as a court's witness. Defendant made this request because Gangestad allegedly told his attorney that Kathe Hoare once asked him to plant two ounces of cocaine at the Rustic Lounge. Gangestad then allegedly told an assistant State's Attorney that Hoare never asked him to do so.

The decision as to whether to call an individual as a court's witness rests within the trial court's discretion. (*People v. Harvey* (1980), 92 Ill. App. 3d 465, 471.) The requisite foundation for having a witness declared a court's witness consists of providing the reasons why the party wishing to call the witness cannot vouch for his or her veracity and establishing that the testimony will relate to direct issues and is necessary to prevent an injustice. (*People v. Dennis* (1970), 47 Ill. 2d 120, 132.) The practice of calling individuals as court's witnesses should be employed sparingly. (*People v. Moriarity* (1966), 33 Ill. 2d 606, 615; *People v. Jackson* (1980), 89 Ill. App. 3d 461, 477.) Declaring a witness a court's witness enables either side to impeach or cross-examine that individual. (*People v. Triplett* (1980), 87 Ill. App. 3d 763, 767.) The primary purpose of this practice is to enable a party to call an important witness whose veracity is doubtful without fear that the party will be unable to impeach the witness if he or she says something which damages the party's case. (*People v. Weaver* (1982), 92 Ill. 2d 545, 563.) A court's witness may only be impeached if his or her testimony actually damages the case of the examining party, not if the testimony merely fails to support that party's position. *Weaver*, 92 Ill. 2d at 563.

Even if Gangestad had been called as a court's witness and testified that Hoare did not ask him to plant cocaine at the Rustic Lounge, defendant could not have impeached him with his alleged

prior, inconsistent statement. Such testimony would not have damaged defendant's case but would have instead constituted a failure to support defendant's position. Thus, calling Gangestad as a court's witness could not have aided defendant.

Furthermore, it has been held that it is not erroneous to deny a party's request to declare an individual a court's witness until some hostility to the requesting party on the part of the witness becomes apparent. (*People v. Bridgeforth* (1972), 51 Ill. 2d 52, 59; *People v. Collins* (1962), 25 Ill. 2d 605, 610-11.) Defendant made no showing of hostility on Gangestad's part. The trial court's refusal to declare Gangestad a court's witness was not error.

Defendant argues that the trial court improperly prevented him from presenting certain testimony in his case in chief and from attempting to elicit certain testimony on cross-examination. This includes the trial court's refusal to allow defendant to call Winston Block, an attorney who purportedly would have testified that defendant spoke to him on February 19, 1987, and told Block he thought he was being set up by a law enforcement agency.

Additionally, defendant asserts that he was improperly barred from introducing evidence about Federal forfeiture proceedings concerning the Rustic Lounge. Defendant also contends that his cross-examination was improperly limited by the trial court in the following respects: (1) he was restricted from asking Agent O'Brien about contacts Kathe Hoare had with persons other than defendant at the Rustic Lounge; (2) he was not allowed to ask Detective Malkin about Hoare's contacts with the West Chicago police department prior to December 1986; (3) he was not allowed to inquire about Sergeant Dolan's prior contacts with the Rustic Lounge; (4) he was not allowed to ask Hoare about certain alleged acts of deceit which did not result in criminal charges; and (5) he was prevented from inquiring into the relationship between Hoare, Kenneth Gammill and Michael Sigler prior to December 1986. Our review of the record indicates that the first and third restrictions on cross-examination alleged by defendant did not even take place.

While defendant complains of several such evidentiary rulings by the trial court, he does not cite a single authority in support of his contention that these rulings were erroneous. Supreme Court Rule 341(e)(7) (113 Ill. 2d R. 341(e)(7)) requires citation of authority in support of contentions made on appeal. The appellate court is not a depository in which the appellant may dump the burden of argument and research. (*People v. Trimble* (1989), 181 Ill. App. 3d 355, 356.) In the case at bar, as in *Trimble*, the State pointed out the

shortcomings in defendant's initial brief, but defendant failed to cite any authority in support of his contentions in his reply brief. Instead, defendant argued in the reply brief that the contentions in question should be addressed because he presented reasoned argument in support of those contentions.

Arguments that fail to satisfy the requirements of Rule 341(e)(7) do not merit consideration on appeal. (*Trimble*, 181 Ill. App. 3d at 357.) It is clear from our holding in *Trimble* that contentions which are not supported by citations of authority do not comply with Rule 341(e)(7). (181 Ill. App. 3d at 356-57.) Such compliance is necessary in order to permit a reviewing court to ascertain the integrity of the contentions raised on appeal and to accurately determine the issues raised on appeal. (181 Ill. App. 3d at 356-57.) Defendant has waived any objection to the aforementioned evidentiary rulings of the trial court.

■■■ ■ Defendant argues that certain testimony elicited by the State from Kathe Hoare violated court orders entered in response to defense motions *in limine* and that the trial court should have granted his subsequent motion for a mistrial. While defendant has not gone out of his way to provide this court with pertinent authorities in support of this argument, citing only a 1937 case from the supreme court of the State of Washington, we shall proceed to review it.

During the December 10, 1986, conversation between Hoare and defendant, defendant referred twice to a $175 debt owed by Hoare and later stated, "You're gonna have to pay me back first." Hoare testified that defendant was referring to a bad check she had written for $175 in October. The check was made out to cash. The prosecuting attorney then asked why Hoare had written the check and Hoare stated, "To purchase cocaine." The attorney then asked how much cocaine she had purchased, and Hoare stated she had purchased one-sixteenth of an ounce.

The sole basis for the defendant's contention that a mistrial should have been granted is that the State purportedly violated two court orders by eliciting the above testimony. The first order granted defendant's motion *in limine* to bar evidence of drug deliveries from individuals other than defendant to Kathe Hoare. The second order was an admonishment by the trial court that the prosecution could only ask Hoare generally if defendant sold her cocaine before December 8, 1986, and could not make any more specific inquiries concerning the subject.

We agree with defendant's assertion that the State violated the

latter order, even though the trial judge did not reach the same conclusion. The prosecuting attorney admitted on the record that he knew Hoare would say she wrote the check to purchase cocaine. Thus, the prosecutor deliberately violated the court's oral instruction to only ask the witness generally if she had purchased cocaine from Rogers before December 8, 1986, and not to ask about any specific transactions. We cannot agree with the trial judge's conclusion that his order was not violated because the testimony did not directly tie defendant in with the transaction. Defendant clearly referred to the $175 debt on the December 10 tape as a debt owed to him. Since Hoare stated that she wrote the $175 check to purchase cocaine, the testimony tied him into a cocaine sale.

Nevertheless, because of the overwhelming evidence against defendant, we conclude that any error in this regard was harmless beyond a reasonable doubt. Hoare's testimony that defendant sold her cocaine on the three dates in question is strongly supported by the tape recordings. Defendant admits that he discussed buying and selling cocaine with Hoare during several of these conversations.

On December 8, 1986, defendant quoted a price of $2,100 for an "ozzy" which, according to Hoare's testimony and defendant's admission, referred to an ounce of cocaine. On December 16, the date of the first alleged sale, defendant asked if Hoare had the money. Hoare stated that she had $1,100. Defendant then stated he would "front [Hoare] a half," meaning one-half ounce of cocaine, according to Hoare. Defendant later told Hoare during this conversation, "I want my money, that's all."

Six days later, Hoare told defendant, "Here is a thousand." Defendant then asked for another hundred. Hoare said, "I gave you 11. It's 21, you said." Defendant was satisfied at this point. On December 29, Hoare stated, "Here's 1100. Is this, this is a half?" Defendant then said, "You owe me a thousand." The recorded conversations clearly support Hoare's testimony that on December 16 and 29, she paid for one-half ounce of cocaine and defendant gave her another half ounce on credit expecting to be paid later. Moreover, on both occasions, Hoare turned over approximately one ounce of cocaine to the agents after she left the Rustic Lounge. On January 30, 1987, the date of the alleged third sale, Hoare stated, "Here's the four grand." She then turned over two ounces of cocaine to the agents.

Defendant's explanation for his statements in the recorded conversations is simply incredulous. He admitted that he was discussing potential cocaine sales with Hoare. Defendant testified, however, that

he suspected all along that Hoare was an informant attempting to set him up on a drug bust. Defendant testified that he played along with Hoare in an effort to find out who was setting him up. His actions and recorded statements are not consistent with this testimony, however. Hoare told defendant several times that she was buying for other people or that another individual was putting up the money. Defendant repeatedly told her that he did not want to see or meet any of these other individuals. If defendant was really trying to find out who was setting him up, it would seem that he would have wanted to meet these other individuals.

Additionally, defendant admitted that he delivered a small amount of cocaine to Hoare on January 20, 1987. It seems incredible that an individual would deliver cocaine to someone that he believed to be a government informant. Even if we accept defendant's testimony that Hoare had given him the cocaine, it is still incredible that he would accept cocaine from a suspected informant and keep it in his possession, even though he harbored the belief that the police were trying to set him up.

A criminal conviction will not be reversed on the basis of trial error unless it appears that the guilty verdict may have resulted from the error. (*People v. Cowper* (1986), 145 Ill. App. 3d 1074, 1083.) In light of the overwhelming evidence against defendant, the prosecution's violation of the trial court's order did not contribute to the guilty verdict.

The allegedly improper remarks made by the prosecutor also constituted harmless error. We will, however, briefly comment upon two of these remarks which were made during closing argument. At one point, the prosecuting attorney stated, "This defendant is cagey, folks, he learned from his brother, Kenny." Defendant's half-brother, Kenny Gammill, had previously testified and admitted to a prior conviction for conspiracy to sell cocaine. At another point, the prosecuting attorney stated, "I guess we are all supposed to hope and believe that drug dealers who sell drugs to grade school and high school kids are just pretending."

Remarks made in closing argument such as the above which serve no purpose but to inflame the jury are manifestly improper. (*People v. Threadgill* (1988), 166 Ill. App. 3d 643, 651.) Although a prosecutor may denounce the accused if his or her remarks are based upon facts in evidence or inferences fairly drawn from the evidence (*People v. Bryant* (1983), 94 Ill. 2d 514, 524), there was not a scintilla of evidence that defendant sold drugs to school children or learned about drug trafficking from his half-brother.

Because of the overwhelming evidence against defendant, the above remarks constituted harmless error. We do not, however, condone these remarks. Such ill-considered and manifestly improper statements can jeopardize the prosecution's entire case in appropriate instances. See *Williams v. Lane* (7th Cir. 1987), 826 F.2d 654, 667; *Threadgill*, 166 Ill. App. 3d at 651.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG and WOODWARD, JJ., concur.