2024 IL App (2d) 230214
No. 2-23-0214
Opinion filed August 1, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kendall County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 16-CF-71 |
| DANIEL E. PERKINS, | ) ) | Honorable Robert P. Pilmer, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Presiding Justice McLaren and Justice Birkett concurred in the judgment and opinion.
Presiding Justice McLaren also specially concurred, with opinion.

**OPINION**

¶ 1    Defendant, Daniel E. Perkins, was indicted on one count each of solicitation of murder for hire (720 ILCS 5/8-1.2(a) (West 2014)), solicitation of murder (*id.* § 8-1(b)), and conspiracy to commit witness intimidation (*id.* §§ 8-2(a), 32-4(b)). Defendant filed a motion *in limine* seeking to suppress over 19 hours of recordings made via an audio recording, or overhear, device, arguing that the inaudible portions of the recordings were so substantial as to render the recordings untrustworthy as a whole. Following a hearing, the trial court agreed with defendant that the recordings, which the State had since redacted down to nine hours and then six hours, were substantially inaudible. Therefore, the court granted defendant's motion. The State filed a motion

for reconsideration or, in the alternative, to admit a further redacted four-hour version of the recordings. The court denied the motion to reconsider as well as the alternative motion to admit the four-hour version of the recordings. The State filed a motion for reconsideration of the court's ruling on the State's alternative motion to admit the four-hour version. The court denied that motion.

¶ 2     The State filed a certificate of impairment and a notice of appeal. Per Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017), the State now seeks interlocutory review of the trial court's orders (1) granting defendant's motion to suppress the recordings, (2) denying the State's motion to reconsider the ruling and, alternatively, to admit the four-hour version of the recordings, and (3) denying the State's motion to reconsider its ruling on the motion to admit the four-hour version. For the following reasons, we reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4     While defendant was in jail on numerous charges related to offenses that he committed against K.O. in June 2015,[1] the State outfitted a cooperating inmate, Robbie Johns, with an audio recording device and recorded conversations between Johns and defendant on July 7, July 16, July 17, July 30, and August 26, 2015,[2] totaling 19 hours.

---

[1]Defendant was ultimately convicted of aggravated kidnapping with a firearm (720 ILCS 5/10-2(a)(6) (West 2014)), two counts of aggravated criminal sexual assault with a firearm (*id.* § 11-1.30(a)(8)), attempted aggravated criminal sexual assault with a firearm (*id.* §§ 8-4(a), 11-1.30(a)(8)), and armed violence (*id.* § 33A-2(a)). The trial court sentenced him to an aggregate term of 52 years in prison. We affirmed. *People v. Perkins*, 2020 IL App (2d) 170963, ¶ 1.

[2]Because one of the overhear recordings spanned two dates—July 16 and 17, 2015—the

¶ 5    On April 10, 2018, defendant was indicted on three charges, stemming from information gathered by Johns. Count I, charging solicitation of murder for hire (720 ILCS 5/8-1.2(a) (West 2014)), alleged that defendant procured Johns to murder K.O. per an agreement whereby defendant would post bond for Johns and provide further things of value to Johns after the murder was committed. Count II, charging solicitation of murder (*id.* § 8-1(b)), alleged that defendant requested Johns to commit murder. Count III, charging conspiracy to commit witness intimidation (*id.* §§ 8-2(a), 32-4(b)), alleged that defendant agreed with Daniel Auberry, a co-conspirator, to commit witness intimidation and that Auberry, in furtherance of that agreement, paid the bail bond of "R.J."

¶ 6    On September 7, 2022, defendant filed two motions *in limine* related to the recordings. "Motion *in limine*—Overhear #1" sought to suppress statements made by defendant on the recordings "relating to uncharged criminal activity, the alleged gang affiliation of *** [d]efendant, and his prior incarcerations" (motion to suppress certain statements). "Motion *in limine*—Overhear #2" sought to suppress the recordings in their entirety (motion to suppress the recordings).

¶ 7    The motion to suppress the recordings is at issue here. In that motion, defendant argued that "[a] partially inaudible sound recording is admissible unless the inaudible portions are so substantial as to render the recording untrustworthy as a whole." According to defendant, "a vast majority of the recorded overhear [was] unintelligible and there exist[ed] inaudible gaps in the recordings at times when *** [d]efendant [was] allegedly discussing the solicitation of murder." Defendant asserted that the "gaps [were] the result of many factors including: loud background

---

overhear recordings were sometimes counted as four rather than five in the proceedings below.

noises, whispering, microphone interference, and multiple individuals speaking simultaneously." According to defendant, "the inaudible portions [were] so substantial as to render the recordings untrustworthy as a whole."

¶ 8 On October 31, 2022, the State advised the trial court that it was redacting from the recordings "certain things that [defense] counsel has asked to be taken out." According to the State, after redacting the requested portions, the only remaining issue would be "whether or not the recording [was] sufficiently clear enough to use as evidence."

¶ 9 On March 7, 2023, after several continuances, defense counsel and the trial court acknowledged receipt of the redacted recordings. The recordings provided to the trial court and defense counsel were about nine hours long. The court continued the matter to allow for listening to the recordings.

¶ 10 On April 4, 2023, at the outset of the hearing, the State indicated that the parties had resolved by agreement the motion to suppress certain statements, given that the State had removed from the recordings everything that defendant wanted removed. Regarding defendant's motion to suppress the recordings, the State advised that, after providing the recordings to the court and defense counsel, it had removed additional portions of the nine-hour version and that the remaining recordings totaled about six hours. The State noted specifically that it had removed approximately 56 minutes and 30 seconds from the beginning of the July 16, 2015, recording and about "14 and a half minutes" of "extended silence." The State further noted that it had removed 79 minutes and 29 seconds from the beginning of the July 30, 2015, recording, which contained "a lot of talk, [and it] appear[ed] as though there's several people listening to a baseball game."

¶ 11 The trial court indicated that it had listened to the previously provided recordings but would listen to the new six-hour version before ruling. The court clarified with the State that the length

of each recording after the most recent redaction was (1) July 7, 2015: 1 hour, 21 minutes, 5 seconds; (2) July 16, 2015: 1 hour, 25 minutes, 45 seconds; (3) July 17, 2015: 21 minutes; (4) July 30, 2015: 1 hour, 22 minutes, 47 seconds; and (5) August 26, 2015: 58 minutes, 47 seconds.[3] The court also inquired about whether the State intended to prepare a transcript. The State advised that "transcripts *** were prepared for a law enforcement agency in cooperation with the person wearing the recording device" and that the State was in the process of obtaining them.

¶ 12    The trial court asked defense counsel if he had additional argument. Defense counsel said that he had listened to the 19-hour and the 9-hour versions of the recordings. He argued that defendant cannot be heard "during the substantial majority portion of [the] overhears." Defense counsel stated:

> "The majority of these overhears are inaudible. Specifically as it relates to what [defendant] is allegedly saying to *** Johns.
>
> I can hear *** Johns. I don't have any problem hearing *** Johns allegedly talking about what [defendant] is telling him. The problem is we're listening to *** Johns, we're not listening to [defendant].
>
> Because we can't hear [defendant] and his portions are unintelligible, it's problematic as to the reliability of the overhear as a whole."

Defense counsel argued that the police reports would not assist in deciphering the recordings, because "large portions of the police reports *** show that this is inaudible." Defense counsel

---

[3]The court did not specifically mention the August 26, 2015, recording, but the record reflects its length.

asked the court "to find that the unintelligible portions are so substantial that the recording as a whole is called into doubt."

¶ 13     The trial court advised the parties that it wanted to listen to the newly edited recordings. The court stated:

> "Certainly I think that there is—some of the material recorded may very well be indiscernible and perhaps a great portion of it may be inaudible, but I don't know what—without listening again, I could say that it is—would be worthless or substantially—that those portions are so substantial as to render the recording itself untrustworthy as a whole."

The court continued the matter.

¶ 14     On April 7, 2023, the trial court heard the parties' arguments as to the admissibility of the six-hour version of the recordings. The court noted that the State had redacted portions of three of the five individual recordings. The State argued that, although defendant contended in his motion to suppress the recordings that the vast majority of them were unintelligible and contained inaudible gaps, the State had since redacted the recordings from 19 hours to 6 hours. According to the State, what remained was not substantially unintelligible and did not contain inaudible gaps. The State recognized that the July 7, 2015, recording was "probably the hardest to here [*sic*]." But, according to the State, it had listened to the July 7, 2015, recording the previous evening, could hear "every single word," and prepared a transcript. The State argued that "[t]here [were] substantial admissions of the planning just in part one, which, as [(defense)] counsel *** conceded[,] [was] the hardest to hear." The State argued that nothing in the recordings rendered them "indiscernible and worthless." The State further commented that it had not "gotten around to transcribing the other four [recordings] yet, but *** [they were of] better quality."

¶ 15    Defense counsel reiterated his position from the prior hearing. Counsel agreed that Johns could be clearly heard for the overwhelming majority of the six-hour version. But counsel emphasized that "[t]he issue [was] the quality of the conversation that [was] allegedly being attributed to [defendant]," which, according to counsel, was "almost impossible to hear."

¶ 16    The State disagreed, arguing that "the private conversations between *** defendant and *** Johns, for the most part, [were] audible." The State agreed that there were "inaudible portions" and "inaudible gaps" but argued that "that [did] not go to admissibility, it [went] to weight."

¶ 17    Defense counsel again reiterated that, although Johns could be heard, defendant's alleged statements were inaudible. Counsel argued:

"The problem is not what *** Johns is saying. The problem is trying to construe what the State is going to allege [defendant] is being heard saying. And that's what we cannot hear, and that's the substantial portion of this overhear that is inaudible, and that's the crux of this."

¶ 18    The trial court granted the motion to suppress. In support, the court relied on *People v. Hunt*, 234 Ill. 2d 49, 66 (2009), which, it noted, cited *People v. Manning*, 182 Ill. 2d 193, 212 (1998). *Manning* held that "[a] partially inaudible sound recording is admissible unless the inaudible portions are so substantial as to render the recording untrustworthy as a whole." *Id.* The trial court stated:

"[T]he court's listened to the nine hours of recording, and then to the three overhears that were further edited to remove material.

And the court acknowledges that there are portions of each of the overhears which are audible. There is no doubt. And the State argues that it's at least 75 percent. The court

is not going to quantify it. I would, however, disagree with that, but I'm not going to quantify it.

But I believe that the, overall, that in each of the overhears that have been provided, that the inaudible portions are sufficiently substantial that the recorded conversations could not be understood.

And I say that, again, I understand that there are parts of the conversations that are audible, but there are, the court believes, substantially more parts that are inaudible.

And so for that reason, I'm going to grant the defendant's motion *in limine*."

¶ 19 On April 21, 2023, the State filed a "Motion to Reconsider, or in the Alternative to Admit Further Redacted Overhear Audio Files as Evidence During Trial." First, the State asked the trial court to reconsider its ruling on the admissibility of the six-hour version, arguing that the recordings were not indiscernible nor were the inaudible portions so substantial as to render the recordings untrustworthy as a whole, because they did not interfere with the understanding of the remaining context. The State also indicated that it had prepared transcripts of the six-hour version and was willing to provide them. The State claimed that the transcripts would confirm that the recording was trustworthy as a whole despite the inaudible portions.

¶ 20 Concerning its alternative motion to admit the further redacted four-hour version of the recordings, the State argued that it redacted the six-hour version of the recordings to remove "several portions where [Johns] [was] speaking and defendant either [did] not respond or [said] something which [was] inaudible." It also removed "unnecessary conversation and more inaudible portions of conversations between defendant and [Johns]." According to the State, "there [were] barely any inaudible portions remaining in the further redacted recordings."

¶ 21    In response, defendant argued that the State's motion for reconsideration should be denied because the State did not establish that (1) there had been a change in the law, (2) new evidence had been discovered, or (3) the trial court had erred in applying existing law. As to the State's alternative motion, defendant argued that the recordings "have only been edited to remove portions and reduce the length of the audio" and, further, that "[e]ven with the use of the purported 'transcript,' which has not been tendered but will likely still contain dozens if not hundreds of 'unintelligible' entries, there still exists substantial inaudible portions which renders the recording untrustworthy as a whole."

¶ 22    A hearing took place on May 31, 2023. In addition to the arguments advanced in its motion, the State asked the trial court to consider each recording's admissibility independently. Defense counsel, in asking the court to deny the State's motion, stated that the court should "exclude the overhears, all of the overhears, not individually as the State has made reference to today, but all four of the overhears as they have been presented as a collective and not severed and presented individually." Counsel also commented on the transcripts as follows:

"[Assistant State's Attorney (ASA) Mark] Shlifka, in his argument, made reference to whether or not I've listened to the 19 hours of overhear with the transcripts and what I had were not transcripts. They were police reports, police reports written by Detective Maggos alongside *** Johns when they were going through these 19 hours of overhears, and I did listen to them and I have them marked on portions that I could hear and portions that I could not hear, but these aren't transcripts.

Every single case I've ever been involved in where there has been overhears, we've had a court reporter, someone who has been certified to take transcripts. This is just cut and paste from police reports, identical to what I received in the initial discovery of what

Detective Maggos compiled when listening to these overhears alongside *** Johns. And I know that transcripts are available, transcripts are allowed to be provided to the jury, they don't go back during deliberations, but [ASA Ryan] Phelps spends a lot of time talking about these transcripts, but this might be a fight for another day, but I wouldn't qualify these as transcripts. I would qualify these as police reports. And these police reports don't have any impact on the quality of the overhear and that's the issue that we have to deal with is the quality of the overhear.

The court listened to the overhear, I listened to the overhear, Mr. Shlifka listened to the overhear, Mr. Phelps has listened to the overhear, and the quality is not good. There is far too much left to the imagination as to what [defendant] may have been saying to *** Johns when they're speaking in hushed tones after lights out."

¶ 23    On June 1, 2023, the trial court denied the State's motion. The court stated:

"The court has had an opportunity to consider the argument of counsel with respect to that motion, and the response that was filed, and to consider the applicable case law, to review my notes with respect to the prior audio recordings which were previously provided, and as well as listening to the four-hour audio, approximately four-hour audio that was provided at the time of the filing of the motion to reconsider, as well as the transcripts that were then provided with that additional audio.

As to this, again, on a motion to reconsider, it's to bring to the court's attention a change in the law, an error in the court's application of existing law, or newly discovered evidence, which was not available at the time of the original hearing or trial.

With respect to the State's argument, I think it would be fair to say that there has not been a change in the law with respect to this issue, and this is not newly discovered evidence which was not available at the time of the hearing.

The State argues that there was an error in the court's prior application of existing law.

As to that issue, again, having reviewed the applicable case law and the court's notes with respect to the prior recordings, which it based its ruling on, the court believes that it correctly applied the law as set forth by the Illinois Supreme Court in [*Hunt*], and that the prior ruling was correct based on that applicable case law.

[*People v. Bauer*, 393 Ill. App. 3d 414 (2009)], which was decided by the 2nd District several months after the *Hunt* decision[,] still follows *Hunt*, and I believe that my ruling was correct applying *Hunt* and [*Bauer*].

The State did make an argument, because I believe that without reviewing a transcript of the hearing, I believe that my order was, or my prior ruling was collectively as to the four recordings, instead of individually for each of the recordings.

To that extent, again, having reviewed the, my notes as to the prior recordings, I believe that while originally done collectively to all recordings, my ruling would apply to each individual recording in that substantially, [a] substantial portion of each recording was inaudible. And that whether any one of the four recordings was the only subject of that, my ruling would be the same as to each individual recording.

So to clarify for purposes of the record, that does apply to each individual recording and not just collectively as a whole to all four.

The State also argued in the alternative that I should consider, in applying the applicable law to the further redacted, what I would call the four-hour recording, but the further redacted recordings of the four overhears, I'm going to deny that request.

I believe that it would be not appropriate once the court has ruled on this then and a party has had an opportunity to discern the court's decision with respect to that then seek to, essentially, come back and ask for the same relief with the, essentially, the same recordings in that regard.

So I'm going to deny the alternative request as well."

¶ 24 On June 7, 2023, the State filed a motion for reconsideration of the denial of its motion to admit the four-hour version of the recordings. The State argued that the trial court erred in relying on *Hunt* and should have relied instead on *Bauer*. In addition, the State argued that the court's individual assessments of the recordings were erroneous. The State argued that, although each recording "has slightly different quality and ability to hear," all of them "contain conversations that are easily understood." On that same day, the court denied the motion.

¶ 25 On June 20, 2023, the State filed a certificate of impairment and a notice of appeal. Per Illinois Supreme Court Rule 604(a)(1) (eff. July 1, 2017), the State now seeks interlocutory review of the trial court's orders (1) granting defendant's motion to suppress, (2) denying the State's motion to reconsider the ruling or, alternatively, to admit the four-hour version of the recordings, and (3) denying the State's motion to reconsider its ruling on the motion to admit the four-hour version of the recordings.

¶ 26                                                    II. ANALYSIS

¶ 27 We first consider the scope of our review. The State, recognizing that multiple versions of the overhear recordings were presented to the trial court, asks us to confine our review to the trial

court's June 1, 2023, decision denying the State's alternative motion to admit the four-hour version of the recordings. The State asserts that it is "unclear" whether the trial court (1) denied the State's request to consider the admission of the four-hour version of the recordings or (2) considered the four-hour version and denied its admission. According to the State, if the court refused to consider the four-hour version, its refusal was an abuse of discretion because it was proper for the State to ask the court to revisit a ruling on a motion *in limine* after the State has revised the evidence to cure any error. The State argues further that, in any event, we should review the admissibility of the four-hour version because the trial court was presented with the disputed evidence, including the four-hour version and the transcript, listened to that version, and heard the parties' arguments on its admissibility before denying the State's June 1, 2023, motion. In addition, the State expressly avers that, if its appeal is successful, it does not intend to introduce the six-hour version at trial.

¶ 28    Defendant responds that the trial court properly denied the State's motion to admit the four-hour version of the recordings, based on *res judicata*, because it was fundamentally the same as the already suppressed recordings. See *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001) ("The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action."). The State disputes this argument. Quoting *People v. Gliniewicz*, 2018 IL App (2d) 170490, ¶ 32, the State argues that a pretrial ruling on a motion *in limine* " 'is always subject to reconsideration during trial.' " (Emphasis and internal quotation marks omitted.) The State further argues that the court's refusal to consider the four-hour version was an abuse of discretion, particularly where the State filed its motion within the usual 30-day period required for reconsideration of an order.

¶ 29    We see no reason not to limit our review to the admissibility of the four-hour version of the recordings. Defendant agrees that there is no meaningful distinction between the four-hour version and the six-hour version of the recordings, stating that "[t]here is nothing on the four-hour recording that was not on the six- or the nine-hour version the [court] listened to." Defendant further agrees that "[a]ll the State did to create the four-hour recording was remove more inaudible portions around the already partially audible portions it felt were most relevant." Defendant also agrees that the trial court listened to the "audio at least three times [(which included the four-hour version)] and at least once with the State-prepared transcript." Indeed, the court made clear the basis of its decision denying the admission of the six-hour version of the recordings, and, in denying the motion to admit the four-hour version, it stated that they were "essentially, the same recordings." Thus, given (1) defendant's acknowledgment that there is no meaningful distinction between the six- and four-hour versions and (2) the State's agreement that, should we reverse, it would not seek to admit the six-hour version, we review the trial court's ruling on the admissibility of the four-hour version of the recordings.

¶ 30    We now turn to the applicable law. It is well established that " '[a] partially inaudible sound recording is admissible unless the inaudible portions are so substantial as to render the recording untrustworthy as a whole.' " *Hunt*, 234 Ill. 2d at 66 (quoting *Manning*, 182 Ill. 2d at 212); see *Bauer*, 393 Ill. App. 3d at 422; *People v. Rogers*, 187 Ill. App. 3d 126, 132 (1989); *People v. Dougherty*, 160 Ill. App. 3d 870, 876 (1987); *People v. Moore*, 90 Ill. App. 3d 760, 765 (1980); *People v. Spicer*, 61 Ill. App. 3d 748, 758 (1978), *rev'd on other grounds*, 79 Ill. 2d 173 (1979). "The decision whether to admit a partially inaudible sound recording is a matter within the sound discretion of the trial court." *Hunt*, 234 Ill. 2d at 66; *Manning*, 182 Ill. 2d at 212.

¶ 31    *Spicer* was the first Illinois case to recognize and apply the standard for admitting a partially inaudible sound recording. *Spicer*, 61 Ill. App. 3d at 758. In *Spicer*, the trial court allowed into evidence a tape recording made by "an audio surveillance system" that recorded audio coming from within the store where the offense at issue occurred. *Id.* at 750. A witness testified that he heard the occurrence, as it occurred, through a monitoring device and that the recording accurately portrayed what he had heard. *Id.* Another witness testified that she compiled a transcript of the recording and that it contained four voices. *Id.* The recording was played twice for the jury while it used the transcript as an aide. *Id.* On appeal, the defendant argued "that the tape recording was of such inferior quality as to render it inadmissible." *Id.* at 758. The Fifth District found no abuse of discretion and affirmed the admission of the recording. The court stated: "Prior to trial, the lower court listened to the recording and found it admissible. We have also listened to the recording and find no basis to disturb the determination of the court below in this regard." *Id.*

¶ 32    In *Moore*, 90 Ill. App. 3d at 762, the trial court admitted recordings from a device worn by an undercover agent pursuant to an eavesdropping authorization. The agent testified to the recorded conversations he had with the defendant. *Id.* The recordings were played for the jury. *Id.* On appeal, the defendant argued that the trial court should have granted his motion *in limine* to exclude the recordings because "portions of them were inaudible." *Id.* at 765. The Fourth District, relying on *Spicer*, disagreed, stating: "The record discloses that the trial court listened to the tapes and found them admissible. We, too, have listened and find that while some portions are garbled, the significant parts are clear." *Id.*

¶ 33    *Dougherty* followed *Spicer* and *Moore*. In *Dougherty*, 160 Ill. App. 3d at 871-73, the trial court allowed into evidence at the defendant's bribery trial a recording of a conversation between the defendant and a witness who had agreed to wear a recording device. The conversation took

place at a restaurant. *Id.* at 873. On appeal, the defendant argued that the trial court erred in denying his motion *in limine* to suppress the recording because it was "unintelligible in part." *Id.* at 875. Citing *Spicer* and *Moore*, the First District found no abuse of discretion in admitting the recordings. *Id.* at 876. The court stated: "At the hearing on [the] defendant's motion *in limine*, the trial court listened to the [recordings] and concluded that although to some extent the recording was inaudible due to background interference, the inaudible portions were not so substantial as to render the recording as a whole untrustworthy." *Id.*

¶ 34    Our court first confronted the issue in *Rogers*. There, audiotape recordings of numerous conversations between the defendant and a government informant were admitted into evidence at the defendant's trial on charges of the unlawful delivery of cocaine. *Rogers*, 187 Ill. App. 3d at 129-30. The informant testified that the recordings accurately depicted the conversations. *Id.* at 131. The recordings were played in court while the jury was allowed to use written transcripts prepared by the State as a guide. *Id.* On appeal, the defendant contended that the trial court erred in admitting the recordings into evidence, arguing that, among other things, "many of the comments made were inaudible or unintelligible." *Id.* at 132. Relying on *Dougherty*, we found that the trial court did not abuse its discretion in admitting the recordings. *Id.* We stated: "While some portions of the tape recordings are inaudible, our review of the tapes indicates that those portions are not so substantial as to render the recordings untrustworthy as a whole." *Id.*

¶ 35    Our supreme court first considered the issue in *Manning*. There, following a jury trial, the defendant was convicted of first degree murder and armed robbery and sentenced to death. *Manning*, 182 Ill. 2d at 197-98. At trial, the court admitted into evidence audiotaped conversations between the defendant and an informant. *Id.* at 211. Six hours of conversations between the men had been recorded and transcribed, but the jury did not hear the complete and unabridged

recordings. *Id.* Instead, during the informant's testimony, the State questioned the informant about various points in the recording, which the jury heard and also read in the transcripts. *Id.*

¶ 36 On appeal, the defendant challenged the admissibility of the audiotaped conversations, arguing that, although the informant testified that during the six-hour recording the defendant twice confessed to murdering the victim, two inaudible gaps in the recording occurred at the times when the defendant purportedly confessed. *Id.* at 211-12. Thus, according to the defendant, the recordings were "incomplete, unreliable, and prejudicial." *Id.* at 212. The supreme court disagreed. *Id.* The court noted that the informant testified that one gap was caused when he bent over and blocked the microphone and the other gap was due to a recorder malfunction. *Id.* The court found that the inaudible gaps were relevant only to the weight of the evidence and not its inadmissibility. *Id.* (citing *United States v. Robinson*, 956 F.2d 1388, 1395 (7th Cir. 1992)). The court stated:

"True, inaudible gaps in the recording occurred when [the informant] testified that [the] defendant confessed. However, despite their significance, they remain only two inaudible gaps out of the total of what the jury heard. We cannot say that the two inaudible gaps challenged here are so substantial as to render the recordings untrustworthy as a whole." *Id.*

¶ 37 Eleven years later, in *Hunt*, the supreme again confronted the issue. There, a jailhouse informant incarcerated with the defendant made audio recordings of the defendant implicating himself in a murder. *Hunt*, 234 Ill. 2d at 52. The defendant moved to suppress the recordings on the basis that they were "substantially inaudible." *Id.* at 54. The trial court suppressed the recordings, finding them "inaudible and 'worthless.' " *Id.* at 54-55. The appellate court affirmed, agreeing that the recordings were "inaudible." *Id.* at 55. The State appealed to the supreme court, which affirmed. *Id.* at 53, 66. After reiterating the standard applied in *Manning*, the court stated:

"The record demonstrates the trial court listened to the recordings and found them to be 'indiscernible' and 'worthless.' Similarly, the appellate court listened to the recordings, found them to be substantially inaudible, and concluded the recorded conversations could not be understood. [Citation.] After listening to the recordings, we also find that they are substantially inaudible and affirm the appellate court's suppression of the *** recordings as within the sound discretion of the trial court." *Id.* at 66.

¶ 38    We faced the issue again in *Bauer*. There, at the defendant's trial on two counts of arson, the trial court admitted into evidence the defendant's audiotaped statement. *Bauer*, 393 Ill. App. 3d at 420. The audiotape was played as the jury followed along with a transcript. *Id.* On appeal from her conviction, the defendant argued that her trial counsel was ineffective for failing to object to the audiotape's admission. *Id.* at 421. The defendant argued that the audiotape was untrustworthy because it contained 125 inaudible portions. *Id.* at 422. We found that the court did not abuse its discretion in admitting the audiotape. *Id.* We stated:

"We have reviewed the audiotape of the defendant's statement as well as the transcript of that statement. The transcript indicates approximately 125 areas where the transcriber could not understand what the defendant or the person who was interviewing her, ***, was saying. Upon careful review of the tape, we are able to understand most of the comments that the transcriber determined were inaudible. Regarding those comments that we cannot discern, we find that they do not undermine the totality of the tape so as to render it untrustworthy. Specifically, the inaudible portions of the tape do not interfere with understanding the defendant's explanation of what happened on the day in question. [Citation.] Furthermore, we note that, from our review of the tape, there is no indication

that the tape was tampered with. As the tape was not improperly admitted, defense counsel was not ineffective for not objecting to its admission." *Id.* at 422.

¶ 39    The State argues that the case law supports the admissibility of the four-hour version of the recordings. According to the State, although portions of the conversations between defendant and Johns are inaudible, none of these portions undercuts the recordings' reliability or trustworthiness. After listening to the four-hour version and using the transcript as a guide, we agree with the State that the trial court abused its discretion in refusing to allow the recordings into evidence.

¶ 40    On April 7, 2015, when it granted defendant's motion to suppress the recordings (specifically the six-hour version), the trial court "acknowledge[d] that there [were] portions of each of the overhears which [were] audible." Indeed, defendant too acknowledged the presence of comprehensible statements in that he filed a motion seeking to suppress certain statements made about prior gang involvement, other crimes, and prior incarcerations. Nevertheless, the court found that there were "substantially more parts that [were] inaudible" such that "the recorded conversations could not be understood."[4] To be sure, the recordings contain inaudible portions. Defendant points out that the transcript of the four-hour version of the recordings contains 1215 uses of the word "(unintelligible)."

¶ 41    However, it is not the number of inaudible portions that adversely affects trustworthiness; instead, it is the reason for the inaudible portions. We find *Manning*, discussed above, instructive. There, the court considered whether two inaudible gaps, which occurred in the portions of the

_____

[4]We note that the trial court did not have the benefit of a transcript when it reviewed the six-hour version of the recordings; it first received the transcript when the State filed its motion for reconsideration.

recording when the defendant was alleged to have twice confessed, rendered the recording untrustworthy as a whole. *Manning*, 182 Ill. 2d at 212. The court concluded that the recording was trustworthy overall. *Id.* The court specifically noted the informant's testimony explaining the cause of the gaps. *Id.* The informant explained that one gap occurred when he bent over and blocked the microphone and the other was due to a recorder malfunction. *Id.* The court recognized the significance of the gaps—*i.e.*, that they occurred during the precise moments when the defendant confessed—but seemed to focus on what caused them. *Id.* The court concluded that the inaudible gaps were relevant only to the weight of the evidence and not its admissibility. *Id.* The court relied on *Robinson*, which held that "[t]he inaudibility of a portion of a tape, which is generally audible, is relevant only to its weight, a jury question, not to its admissibility." *Robinson*, 956 F.2d at 1395.

¶ 42    Defendant argues that "generally audible," as used in *Robinson*, implies that most of the audio should be understandable. Here, the recordings are *generally* audible, with inaudible portions of varying degrees throughout. In the transcript, the word "(unintelligible)" can represent a missing word, phrase, or a longer period of speaking where defendant is whispering, mumbling, or his voice is muffled. However, many of the areas on the transcript marked as "(unintelligible)" represent an extremely small portion of a sentence and do not significantly impact the meaning of the sentence. The recordings cannot be described as " 'indiscernible' and 'worthless,' " as were the recordings in *Hunt*. *Hunt*, 234 Ill. 2d at 66. Nor is there any indication of tampering with the recordings. See *Bauer*, 393 Ill. App. at 422 (noting same).

¶ 43    Defendant also argues that "the more inaudible a recording is, the fewer teeth the completeness doctrine has, because the defense does not have a good source recording it can play to explain the context around the audio clips the State chooses to play." See Ill. R. Evid. 106 (eff. Jan. 1, 2011) ("When a writing or recorded statement or part thereof is introduced by a party, an

adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."). However, as the State notes, nothing precludes defendant from introducing the entire 19 hours of the overhear recordings.

¶ 44    The State should not be precluded from seeking to admit statements from the four-hour version of the recordings where there is no issue as to the trustworthiness of the recordings themselves. To the extent defendant's statements include inaudible portions, any inaudibility goes only to the weight given to the statements, not their admissibility. As the State notes, Johns would undoubtedly testify at trial and be subject to cross-examination. Johns's credibility would be an issue for the trier of fact. Defendant would be free to argue the meaning and reliability of any admitted portions of the recordings.[5]

_____

[5]Although not cited by either party, we note that Illinois Rule of Evidence 1006 (eff. Jan. 1, 2011) provides for the admission of summary exhibits. It states that "[t]he contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court." *Id.* Such summaries are admissible because they simplify and clarify what the underlying evidence "would show if the jurors took the time and had the ability to chart the details." *F.L. Walz, Inc. v. Hobart Corp.*, 224 Ill. App. 3d 727, 732 (1992). Here, the four-hour version of the recordings is essentially a summary of the 19 hours of recorded conversations. We note too that, under Illinois Rule of Evidence 1008 (eff. Jan. 1, 2011), "when an issue is raised *** whether other evidence of contents correctly reflects the

¶ 45                                    III. CONCLUSION

¶ 46    We reverse the judgment of the circuit court of Kendall County and remand for further

proceedings.

¶ 47    Reversed and remanded.

¶ 48    PRESIDING JUSTICE MCLAREN, specially concurring:

¶ 49    I want to emphasize a point about the difference between the trial court's analysis and this

court's analysis of the unintelligible portions, *vis-à-vis* the entire length of the audio recording.

The trial court considered the 1215 unintelligible portions quantitatively. It considered the sheer

number of portions rather than the nature, extent, and character of the remaining portions; *i.e.*, the

trustworthiness, or lack thereof, of what remained. This court considered the unintelligible portions

qualitatively. We considered the entirety of the recording's nature, extent, and character with

regard to the trustworthiness of what remained. Analogically, the trial court determined the winner

of the football game by the team with the most minutes of possession of the ball. We determined

the winner by the score.

---

contents, the issue is for the trier of fact to determine as in the case of other issues of fact."

*People v. Perkins*, 2024 IL App (2d) 230214

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Kendall County, No. 16-CF-71; the Hon. Robert P. Pilmer, Judge, presiding. |
| **Attorneys for Appellant:** | Eric C. Weis, State's Attorney, of Yorkville (Patrick Delfino, Edward R. Psenicka, and David S. Friedland, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Christopher McCoy, and Andrew Thomas Moore, of State Appellate Defender's Office, of Elgin, for appellee. |